**AGREEMENT**

**BETWEEN**

**LOCAL 1660 HOME HEALTHCARE WORKERS OF AMERICA**
**(the "Union")**
**and**
**ATTENDING HOME CARE SERVICES, LLC,**
**(the "Employer"**

**Term: May 1, 2016 – April 30, 2019**

**ARTICLE** **PAGE**


ARTICLE 1 - RECOGNITION AND COVERAGE ..... 1
ARTICLE 2 - UNION SECURITY ..... 1
ARTICLE 3 – CHECK-OFF ..... 2
ARTICLE 4 – VISITATION ..... 3
ARTICLE 5 - UNION STEWARDS ..... 3
ARTICLE 6 - REAL PARTY IN INTEREST ..... 4
ARTICLE 7 - RIGHT TO HIRE AND FIRE ..... 4
ARTICLE 8 - ADJUSTMENT OF DISPUTES ..... 4
ARTICLE 9 – SENIORITY ..... 5
ARTICLE 10 - WAIVER OR MODIFICATION ..... 6
ARTICLE 11 - NO STRIKE ..... 6
ARTICLE 12 – SUPPLEMENTAL INCOME BENEFIT ..... 6
ARTICLE 13- REGULAR WORK WEEK AND WORK DAY ..... 7
ARTICLE 14 – HOLIDAYS ..... 7
ARTICLE 15 – VACATIONS ..... 7
ARTICLE 16 - NO DISCRIMINATION ..... 8
ARTICLE 17 - SICK LEAVE ..... 8
ARTICLE 18 – LEAVE OF ABSENCE ..... 8
ARTICLE 19 - WAGES AND MINIMUMS ..... 9
ARTICLE 20 - NO REDUCTION OF BENEFITS ..... 9
ARTICLE 21 - SAVINGS CLAUSE ..... 10
ARTICLE 22 – TERM OF AGREEMENT ..... 10

**AGREEMENT**, made this 1ST day **of May, 2016**, by and between **Local 1660, Home Healthcare Workers of America,** its affiliates, assigns, and successors, having its principal office at 93 Lake Street, Danbury, Connecticut 06810 (hereinafter called the "**Union**"), acting for and on behalf of itself and the employees covered by this Agreement, now employed or hereafter to be employed by the Employer; and **Attending Home Care Services, LLC,** 1125 Fulton Street, Brooklyn, New York 11238, (hereinafter called the "**Employer**").

**WITNESSETH:**

In consideration of the mutual covenants, provisions and conditions of this Agreement and other good and valuable considerations, the parties hereto agree as follows:

**ARTICLE 1 - RECOGNITION AND COVERAGE**

**Section 1 – Recognition**

The Union represents that it has been designated by the majority of the employer's employees in the bargaining unit, hereafter described as the collective bargaining agent of said employees, and has exhibited to the employer, collective bargaining authorization signed by a majority of such present employees of the Employer. The Employer acknowledges that the Union has demonstrated such majority status.

**Section 2 - Coverage**

The Employer recognizes the Union as the duly authorized representative and exclusive bargaining agent for all full time and regular part time home healthcare aides and personal care aides, excluding all other employees, and including but not limited to, managers, office clerical, professional and technical employees, guards and supervisors, as defined in the National Labor Relations Act.

**ARTICLE 2 - UNION SECURITY**

a) It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the execution or effective date

of this Agreement, whichever is later, shall remain members in good standing for the term of this Agreement. Employees who are not members in good standing on the execution or effective date of this Agreement, whichever is later, shall on the thirtieth (30th) day following the execution or effective date of this Agreement, whichever is later, become and remain members in good standing in the Union for the term of this Agreement. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its execution or effective date whichever is later, shall after thirty (30) days from the beginning of such employment and for the term of this Agreement, become and remain members in good standing in the Union. The requirement of membership in good standing under this Article is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly required.

b. Upon notice to the Employer by the Union, in writing, that an employee is delinquent in payment of or has failed to tender the periodic dues and initiation fee uniformly required by the Union as a condition of acquiring and retaining membership in good standing, the employer shall within fifteen (15) days discharge such employee and advise the Union thereof in writing of its action taken.

c) The chief shop steward shall be notified by the Employer when a new employee is hired.

d) For the first 90 days, new employees shall be considered "probationary employees." They shall receive the benefits under this contract but may be discharged without recourse to the grievance procedure.

**ARTICLE 3 – CHECK-OFF**

**Section 1 – Check-Off Authorization**

a) The Employer shall deduct from each employee an amount equal to the initiation fees and

membership dues uniformly required as conditions of acquiring and retaining membership in the Union, provided that the employee has duly signed, dated and delivered to the Employer, the written authorization form for such deductions substantially as set forth below in this Section 1 (a). The Employer will notify the Union of any revocation of an authorization by an employee.

> "I hereby authorize and direct my Employer to deduct from my wages and to pay over to **Local 1660, Home Healthcare Workers of America** such amounts, including Dues and Initiation Fees (as Membership Dues) in said Union, as may be established by the Union and become due to it from me during the effective period of this authorization.
>
> This authorization may be revoked by me as of any anniversary date hereof, or termination date of the Collective Bargaining Agreement, whichever occurs sooner, by written notice signed by me. This authorization shall automatically renew itself unless written revocation is submitted."

b) Nothing contained in this Article shall be construed so as to require the Employer to violate any applicable law.

**ARTICLE 4 – VISITATION**

An official representative of the Union shall be permitted reasonable time to visit the Employer's premises during working hours. [This shall not include patients' homes.] Each representative shall first report to the office of the Employer and he shall not interfere with the work of any employee and shall, at all times, comply with shop rules.

**ARTICLE 5 - UNION STEWARDS**

a) The Union shall designate not more than one (1) employee as chief shop steward and one alternate for the Employees. The chief shop steward shall have top seniority in the shop of the Employer for layoff purposes, provided, however, that he/she is able to perform the functions of the position for which he/she seeks to claim his/her seniority.

b) The shop steward shall suffer no loss of pay for time spent by him/her during regular working hours in the handling of grievances.

**ARTICLE 6 - REAL PARTY IN INTEREST**

It is agreed that this Agreement shall not vest or create in any employee or group of employees covered thereby, any rights or remedies which they or any of them can enforce either at law, equity or otherwise, and whether as principal of third party beneficiary or otherwise, it being understood and agreed on the contrary, that all of the rights and privileges created or implied from this Agreement shall be enforceable only by the parties hereto and only in the manner established by this Agreement.

**ARTICLE 7 - RIGHT TO HIRE AND FIRE**

a) The Employer shall have the right to hire, without regard to Union membership or lack of Union membership, such employees as it deems necessary for efficient operation of its business.

b) All new employees covered by this Agreement shall be hired upon a trial basis, and the Employer shall have the absolute right to discharge any employees thus hired at any time within the first ninety (90) days of their employment.

c) The Employer shall have the right to discharge any employee covered by this Agreement for any good cause. The Union shall have the right to challenge such discharge within ten (10) business days thereof, and in the event that the Union challenges such discharge, the same shall be adjusted as a grievance as hereinafter provided in this Agreement. Pending final disposition of said grievance, the employee need not be retained on the job by the Employer but, in the event that the employee is not retained on the job by the Employer, the arbitrator shall have the right, in his discretion if he so determines, to order the reinstatement of such employee with or without back pay.

**ARTICLE 8 - ADJUSTMENT OF DISPUTES**

All disputes, complaints, controversies, claims and grievances arising between the Employer and the Union, (on behalf of any employee) with respect to, concerning or growing out of the interpretation, operation, application, performance or claimed breach of any of the terms and

conditions of this Agreement shall be adjusted in accordance with the following procedure:

a) The matter shall first be taken up between a representative of the Union and the Employer after the Union becomes aware such dispute has arisen. If the said dispute shall not be adjusted within five (5) working days thereafter, then the grievance shall be reduced to writing by the aggrieved party and the matter may be submitted to arbitration upon written notice by either party to the other.

b) The parties designate Elliott Shriftman, J.J. Pierson, and Randi E. Lowitt, Esq. as permanent arbitrators to hear and decide every grievance, on a rotating basis beginning with Arbitrator Shriftman. In the case of a scheduling conflict, the parties, may upon mutual agreement, designate Aaron Shriftman or any other arbitrator to hear any particular grievance. Such substitution shall not alter the ordinary rotation of the permanent arbitrators. The decision of the arbitrator shall be final, binding and exclusive on the parties and the employees. The arbitrator's award shall be fully enforceable in law, or in equity. It is expressly understood and agreed, however, that the arbitrator shall not have the power to amend, modify, or alter, or in any way, add to or subtract from this Agreement or any provision thereof. The cost of arbitration shall be shared equally by the Employer and the Union.

**ARTICLE 9 – SENIORITY**

a) The Employer shall have the right to lay off employees covered by this Agreement according to the needs and requirements for the successful, efficient operation of the business. The layoff shall be governed by the rules of seniority, but the rule of seniority shall not be based on an overall company seniority only. The layoff shall be effective on the basis of seniority according to the requirements of the operation and with due consideration being given to whether the employee has the knowledge and ability to perform or operate the particular work involved.

b) All present employees covered by this Agreement shall be entitled to seniority rights. All

new employees covered by this Agreement, who have completed their probationary period, shall be entitled to seniority rights retroactive to their date of hire. All employees formerly employed by Employer shall have their seniority carried over to Employer Home Healthcare for all purposes under this contract.

c) All layoffs shall be in inverse order of seniority; that is, subject to the qualification stated above, the last person hired shall be the first person laid off. In the event that additional employees shall be needed, all persons covered by this Agreement previously laid off within a period of six (6) months prior thereto, shall be rehired in the reverse order of seniority; that is, the last person laid off, shall be the first person to be rehired; provided, however, that any employee so recalled, must report for work within three (3) days after the sending of notification, by mail or overnight delivery addressed to the employee at his last known address, by the Employer, or failing to do so, shall forfeit his right in the Employer's employ.

**ARTICLE 10 - WAIVER OR MODIFICATION**

Neither the Employer, nor any employee, or group of employees, shall have the right to waive or modify any provision of this Agreement, without the written authorization of the Union.

**ARTICLE 11 - NO STRIKE**

During the life of this Agreement, there shall be no strike, stoppage of work, slowdown, picketing, boycotting, lockout, or any other economic pressure of any kind by either party against the other for any reason or matter, controversy or grievance, or claim of breach of contract of any kind, nature or description, between the parties hereto.

**ARTICLE 12 – SUPPLEMENTAL INCOME BENEFIT**

a) The company shall provide a supplemental income benefit to all employees at no cost (as described in the company's Employment Handbook).

b) The Union shall provide $10,000 of accidental death and dismemberment benefits to all eligible members.

## ARTICLE 13- REGULAR WORK WEEK AND WORK DAY

A normal regular work week shall be 20 or more hours per week. For "live in" aides, a normal work day shall be 13 hours per day (paid). The Company's Employee Handbook shall further describe a normal work week or normal work day.

## ARTICLE 14 – HOLIDAYS

a) The following six (6) holidays shall be granted to all employees covered by this Agreement, irrespective of the day of the week on which such holiday occurs. Refer to the Company's Employee Handbook for how overtime is paid when working a holiday and how to qualify for holiday pay

| | |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

b) In the event that any employee is called to work on any of the above-mentioned holidays, the employee shall be paid at a rate of 1 ½ times minimum wage per hour paid for all work performed on that day, as provided in the "Employee Handbook."

## ARTICLE 15 – VACATIONS

a) All employees covered by this Agreement shall be eligible for paid vacations according to the following schedule:

All employees who have completed one thousand four hundred (1,400) hours of employment within twelve (12) months of their hire date and each year thereafter measured from the anniversary of their hire date, shall receive one (1) week of paid vacation per year. The number of hours paid shall be calculated by dividing an employee's annual hours (beginning on the anniversary date of their hire each year) by fifty-two (52), but in no event shall there by more than forty (40) hours

of paid vacation. Such vacation shall be scheduled on advance notice, subject to the Employer's approval based upon operational and patient needs, as well as seniority where there are competing requests among employees. If the vacation schedule the employee seeks is not available, the employee may request another time for his/her vacation, the scheduling of which will be subject to the consideration set forth above.

b) If the employment of any employee covered by this Agreement is terminated or ceases for any reason, except for theft or gross misconduct, such employee shall receive pro-rated vacation pay, calculated from the anniversary date of hire.

## ARTICLE 16 - NO DISCRIMINATION

a) The Employer shall not discriminate against any person because of membership in the Union.

b) The Employer shall not discriminate in the equal distribution of work within the bounds of skill and knowledge of the employees involved in the particular type of job classification.

c) The provisions of this Agreement shall be applied to all employees covered by this Agreement without discrimination because of race, color, religion, national origin, sex or age, creed, disability, marital status, sexual orientation and citizenship status as provided by law.

## ARTICLE 17 - SICK LEAVE

All employees covered by this Agreement shall be entitled to 40 hours sick leave per year. The Company shall apply and comply with the New York City and New York State law regarding accumulation and payment of sick leave which shall be deemed a benefit incorporated herein.

## ARTICLE 18 – LEAVE OF ABSENCE

a) Supplementing rights that may be available under the Family Medical Leave Act (FMLA), any employees becoming ill shall be entitled to a leave of absence for a personal illness

for up to six (6) months during any twelve (12) month period, said employee shall be entitled to reinstatement upon application to their former position without loss of seniority. An employee injured on the job and on Worker's Compensation shall be entitled to reinstatement to their former position without loss of seniority upon application within one (1) year of the leave of absence caused by the injury.

b) Seniority shall continue to accrue during paid leave, military leave, and periods for which the employee receives disability benefits or worker's compensation.

c) Contributions and payments for supplemental income benefit shall continue to be paid during the period of all leaves provided for in this Agreement which do not exceed one (1) month, commencing with the first day of the month after the month in which the employee began the leave.

d) In all cases, the company shall comply with all applicable local, state, and federal laws.

## ARTICLE 19 - WAGES AND MINIMUMS

| **Classification** | **Date** | **Rate** |
|---|---|---|
| Home Healthcare Aide | May 1, 2016 | $10.00 per hour |
| Live in Home Healthcare Aide | May 1, 2016 | $10.00 per hour for 13 hrs/day ($130/day) |

"Hard to Manage" clients are those for whom the company shall pay $0.50 per hour and as much as $1.00 per hour additional to employees who care for these clients. ("Hard to manage" shall be determined by the Company.)

The Company shall provide a $21.66 per month clothing allowance to all employees who work one day in any month.

The Company shall provide a $10.00 monthly cell phone allowance to all employees who work one day in any month.

## ARTICLE 20 - NO REDUCTION OF BENEFITS

No regular employee on the payroll shall be required to take a reduction in pay or loss of an economic benefit as a result of the execution of this Agreement, or the application of any of its provisions now or hereinafter in effect.

**ARTICLE 21 - SAVINGS CLAUSE**

If any provision of this Agreement should be held or adjudged illegal, or in violation of any present or future law, such adjudication shall not invalidate any other portion or provision of this Agreement, nor relieve any party thereto from their liabilities and obligations under this Agreement, but the remainder shall continue in full force and effect. In the event that any portion of said Agreement is held illegal as above-mentioned, the parties agree to meet promptly in order to agree upon a proper and legal substitute.

**ARTICLE 22 – TERM OF AGREEMENT**

a) This Agreement shall be and continue in full force and effect from the date of execution thereof, to and including the **30th day of April, 2019,** and this Agreement shall automatically renew from year to year thereafter, unless notice by registered mail or overnight delivery service is given to either party to the other not less than sixty (60) days prior to the current termination date thereof, of intention to renew, modify or terminate this Agreement. The terms and conditions of the Agreement shall remain in effect during negotiations for a renewal or modification of the agreement or as may be required by applicable law.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and upon their respective successors, purchasers, assignees, and legal representatives. If the Employer shall purchase, acquire, or merge with any other home healthcare agency or company, this collective bargaining agreement will automatically be binding on the newly acquired agency or_company. If Local 1660 Home Healthcare Workers of America, affiliates with or merges with any other labor

organization, this contract shall remain in full force and effect.

The language in this contract shall supersede anything in the "Employee Handbook" unless mutually agreed upon by the parties.

**IN WITNESS WHEREOF**, the parties have caused these presents to be signed and sealed by their respective officers thereunto duly authorized the day and year first above-written.

**Local 1660, Home Healthcare Workers of America**

By: ______________________________

**Contributions are not considered "received" until they are in the hands of the Fund Administrator.**

**Attending Home Care Services, LLC**

By: ______________________________