18-651
*Abdullayeva v. Attending Home Care Services, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2018

(Argued: February 19, 2019   Decided: July 2, 2019)

No. 18-0651

_____

TATYANA ABDULLAYEVA, Individually and on Behalf of All Others Similarly Situated

*Plaintiff-Appellee,*

-v.-

ATTENDING HOMECARE SERVICES LLC, DBA ATTENDING HOME CARE

*Defendant-Appellant.*

_____

Before:   WALKER and LIVINGSTON, *Circuit Judges*, and FAILLA, *District Judge*.[1]

Defendant-Appellant Attending Homecare Services LLC ("Attending") appeals from a Memorandum and Order of the United States District Court for the Eastern District of New York (Weinstein, *J.*), denying Attending's motion to compel arbitration. On appeal, Attending argues that the district court erred in determining that (1) the arbitration clause in the collective bargaining agreement

---

[1] Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

1

CERTIFIED COPY ISSUED ON 07/02/2019

permitted, rather than mandated, arbitration; and (2) the arbitration clause denied due process to Attending's employees. We conclude that the arbitration clause (1) mandated arbitration of the claims at issue here; and (2) did not deny due process to Attending's employees.

Accordingly, the judgment of the district court is REVERSED.

| | |
|---|---|
| FOR PLAINTIFF-APPELLEE: | STEVEN L. WITTELS, Tiasha Palikovic, Wittels Law, P.C., Armonk, NY. |
| FOR DEFENDANT-APPELLANT: | DANIEL GOMEZ-SANCHEZ, Lisa M. Griffith, Ira D. Wincott, Littler Mendelson, P.C., Melville, NY. |

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Defendant-Appellant Attending Homecare Services LLC ("Attending") appeals from a March 5, 2018 Memorandum and Order of the United States District Court for the Eastern District of New York (Weinstein, *J.*), denying Attending's motion to compel arbitration. On appeal, Attending argues that the district court erred in determining that (1) the arbitration clause in the collective bargaining agreement ("CBA") permitted, rather than mandated, arbitration; and (2) the arbitration clause denied due process to Attending's employees. We conclude that the arbitration clause (1) mandated arbitration of the claims at issue here; and (2) did not deny due process to Attending's employees. Accordingly, we reverse the judgment of the district court.

## BACKGROUND

Attending is a home health care provider operating in the greater New York City area. Attending's large professional staff of health and personal care workers provides home assistance to otherwise-independent elderly New Yorkers. Plaintiff-Appellee Tatyana Abdullayeva ("Abdullayeva") is one of those workers and has been since October 2014.

As a condition of her employment, Abdullayeva—like all of Attending's home care workers—was required to join the Home Healthcare Workers of America. She became a member of the Local 1660 chapter ("the Union") on April 13, 2016. At around the same time, the Union and Attending reached agreement on the CBA. The CBA was the result of an extended negotiation process and set out detailed terms governing the relationship between and among Attending, its workers, and the Union. The CBA became binding on Attending's workers on its effective date, May 1, 2016, and remained so until April 30, 2019.

On April 27, 2017, a year after the initial agreement, the Union and Attending negotiated an amendment to Article 8 of the CBA, which is entitled "Adjustment of Disputes." As amended, Article 8(B) reads, in relevant part:

> B. The parties [the Union and Attending] further agree a goal of this Agreement is to ensure compliance with all federal, state, and

local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes, *all claims brought by either the Union or Employees*, asserting violations of or arising under the Fair Labor Standards Act . . . , New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, *shall be subject exclusively, to the grievance and arbitration procedures described below.*

> 1) The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. *All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration* before Elliott Shriftman. . . .
>
> . . . .
>
> 4) In the event an Employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of himself/herself, *may submit their individual claim to mediation, or following the conclusion of mediation, to arbitration*. . . .

A-52–53 (emphases added).

In October 2017, on behalf of herself and all similarly situated employees, Abdullayeva filed suit against Attending in the United States District Court for the Eastern District of New York. She alleged that Attending had, *inter alia*, willfully failed to pay its workers overtime and spread-of-hours pay in violation of the Fair

4

Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). In the alternative, Abdullayeva alleged unjust enrichment. Attending responded by moving to compel arbitration, arguing that Article 8(B) mandated arbitration of claims like Abdullayeva's and thus barred her from seeking relief in federal court.

On March 5, 2018, the district court (Weinstein, *J.*) denied Attending's motion and held that the CBA did not bar Abdullayeva from bringing her FLSA and NYLL claims in federal court. The district court first concluded that the CBA violated Abdullayeva's due process rights because the arbitrator had been preselected by the Union and Attending without any input from Abdullayeva. The court then interpreted Article 8(B) to render arbitration of Abdullayeva's claims permissive rather than mandatory. More specifically, the court determined that Article 8(B)(4), in particular, is "at best ambiguous," and does not satisfy the "clear and unmistakable" test applicable to the assessment of purported waivers of union members' right to bring statutory claims in court when such waivers are part of a collective bargaining agreement's arbitration provisions.

Attending timely appealed.

## DISCUSSION

### I

We review *de novo* a determination whether parties have contractually bound themselves to arbitrate a dispute. *See Local 348-S v. Meridian Mgmt. Corp.*, 583 F.3d 65, 68 (2d Cir. 2009). In doing so, we apply a "standard similar to that applicable for a motion for summary judgment," drawing all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). We ordinarily answer four questions in this inquiry: (1) whether the parties agreed to arbitrate; (2) the "scope" of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are "nonarbitrable"; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). Only the first two questions are at issue in this case.[2]

In answering the first question—whether the parties agreed to arbitrate—we look to "state contract law principles." *Nicosia*, 834 F.3d at 229; *see also M&G*

---

[2] There is no dispute that Abdullayeva's statutory claims are arbitrable. Abdullayeva concedes as much by contending that arbitration is permissive and *may* be pursued at the option of the employee. *See* Appellee Br. 14.

*Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) ("We interpret collective-bargaining agreements . . . according to ordinary principles of contract law . . . ."). Under governing New York law, agreements must be "construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). The terms of an agreement provide the best evidence of what the parties intend, and "a written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms." *See id.* Furthermore, "we do not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole." *Gary Friedrich Enterps., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013).

As to the second question, the *scope* of the arbitration agreement, we normally resolve "any doubts . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). This presumption in favor of arbitrability comes from the Federal Arbitration Act, which "direct[s] courts to abandon their hostility" toward arbitration and to instead "respect and enforce agreements to arbitrate." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). However, an exception to the scope presumption applies in the context of a union's waiver of its members' right to bring statutory claims in court. The Supreme Court

has held that a union *can*, on behalf of its members, "agree to the inclusion of an arbitration provision in a collective-bargaining agreement," *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009), even one that mandates arbitration of FLSA claims, *see Epic Sys. Corp.*, 138 S. Ct. at 1626–27. But such waivers of union members' right to bring claims in court "must be 'clear and unmistakable.'" *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 82 (2d Cir. 2016) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998)).

At this point, we must clarify an item of confusion that seems to have infected the district court's analysis. The district court framed the sole relevant inquiry as whether "[a] clause purporting to require arbitration of a [FLSA] claim that is contained in a collective bargaining agreement" clearly and unmistakably requires arbitration. *Abdullayeva v. Attending Homecare Servs., LLC*, 2018 WL 1181644, at *1 (E.D.N.Y. Mar. 5, 2018). The district court therefore applied the "clear and unmistakable" standard when analyzing whether the Union *agreed* to arbitrate on behalf of its members. This was error.

Under relevant Supreme Court and Second Circuit caselaw, the "clear and unmistakable" standard is applicable only to the question whether a union has waived its members' right to bring statutory claims in court, not to the initial

8

question whether an arbitration agreement exists at all. After all, the clear and unmistakable standard does not reflect *disfavor* of union-negotiated arbitration agreements. *Cf. 14 Penn Plaza*, 556 U.S. at 260 ("Nothing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative."). Instead, the standard ensures that employees' right to bring statutory claims in court is not waived by operation of confusing, "very general" arbitration clauses. *See, e.g.*, *Wright*, 525 U.S. at 80 (determining that clause mandating arbitration of "matters under dispute" did not waive right to bring claims of employment discrimination in court, because such an ambiguous clause "could be understood to mean matters in dispute under the contract"); *cf. 14 Penn Plaza*, 556 U.S. at 260 (holding that a collective bargaining agreement that "clearly and unmistakably requires union members to arbitrate [Age Discrimination in Employment Act] claims is enforceable as a matter of federal law"); *Lawrence*, 841 F.3d at 83 (stating that "in order for a mandatory arbitration provision in a CBA to encompass an employee's statutory discrimination claims, the inclusion of such claims must be unmistakable, so that the wording is not susceptible to a contrary reading"). Put differently, we ask not whether the parties clearly and unmistakably agreed to arbitrate, but whether,

once we have established that an agreement exists, that agreement clearly and unmistakably encompasses the plaintiff's statutory claims. The clear and unmistakable standard, therefore, is specific to the scope question and has no bearing on whether there is an agreement to arbitrate in the first instance.

* * *

Armed with the correct standard, we have no trouble concluding both that the Union agreed to mandatory arbitration in the CBA on behalf of its members and that the arbitration agreement at issue clearly and unmistakably encompasses Abdullayeva's FLSA and NYLL claims.

At all relevant times, Abdullayeva was a member of the Union and employed by Attending. The Union was legally authorized to negotiate collective bargaining agreements on Abdullayeva's behalf. *See* 29 U.S.C. § 159(a) (stating that unions "selected for the purposes of collective bargaining by the majority of the employees," as the Union was here, "shall be the exclusive representatives of all the employees . . . for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment").

Abdullayeva is thus bound by the provisions of the CBA, including amended Article 8.[3]

The provision at issue here, Article 8(B), when read in its entirety—as it must be, *see Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)—unambiguously requires that employees with claims under the Covered Statutes, like Abdullayeva, must *arbitrate* those claims.[4] Article 8(B) states that its goal is to "ensure the uniform administration and interpretation of [the CBA]," and that the means by which it will achieve that goal is to require that all claims under the Covered Statutes, brought by the Union or employees, "be subject *exclusively* . . . to the grievance and arbitration procedures described below." A-52 (emphasis added). Article 8(B)(1) then states that "all [claims under the Covered Statutes,] if not resolved in the grievance procedure, . . . shall be

---

[3] Though Abdullayeva did not have an opportunity to vote for the CBA or the subsequent amendment, the Union's bylaws do not require member ratification votes, *see* A-90, nor are such votes required by law, *see White v. White Rose Food*, 237 F.3d 174, 182 (2d Cir. 2001) ("Federal labor law does not require rank-and-file ratification of employer-union agreements."); *see also Safonova v. Home Care Servs. for Indepen. Living, Inc.*, 85 N.Y.S.3d 58, 59 (N.Y. App. Div. 2018) (stating that ratification is not required as a matter of law where not required by union bylaws).

[4] To repeat, the Covered Statutes include the FLSA, the New York Home Care Worker Wage Parity Law, and NYLL.

11

submitted to final and binding arbitration." A-52. On its face, this language simply does not allow an employee to choose to proceed in a judicial forum.

The district court, in concluding that Article 8(B) rendered arbitration *permissive* rather than mandatory, focused on subsection (4) of Article 8(B). That provision states that where an employee has requested that "the Union process a grievance alleging a violation of the Covered Statutes," but the Union has declined to process that grievance, the employee "*may* submit [this] individual claim to mediation, or following the conclusion of meditation, to arbitration." A-53 (emphasis added). The district court read the word "may" in Article 8(B)(4) to mean that employees can "choose whether to arbitrate" or pursue their claims in court. *Abdullayeva*, 2018 WL 1181644 at *6. We do not think that "may," or the rest of Article 8(B)(4), can bear such an interpretation.

Article 8(B)(4) is best read as clarifying that when the Union declines to process particular grievances on employees' behalf, aggrieved employees have two options. They "may" either (1) submit their claims to meditation and arbitration or (2) abandon the claims entirely. This reading not only makes sense of the provision in isolation but also in the "context of the entire agreement." *Gary Friedrich Enterps., LLC*, 716 F.3d at 313; *Law Debenture Tr. Co.*, 595 F.3d at 67. To

12

read Article 8(B)(4)'s use of the word "may" otherwise, as the district court did, is to bring subsection (4) into conflict with the rest of Article 8(B), which as explained above manifestly reflects an intent to require arbitration. Indeed, the district court's reading makes little sense in light of Article 8(B)(1)'s requirement that "*all* [claims under the Covered Statutes,] if not resolved in the grievance procedure . . . shall be submitted to final and binding arbitration" (emphasis added). *Cf. Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (noting that under New York law, "an interpretation that gives a reasonable and effective meaning to *all terms of a contract* is generally preferred to one that leaves a part unreasonable or of no effect" (emphasis added) (internal quotation marks omitted)). Accordingly, we conclude, contrary to the district court, that the CBA unambiguously reflects the Union's agreement, on behalf of its members, to binding arbitration.

As to the scope of that agreement, Article 8(B) clearly and unmistakably incorporates Abdullayeva's statutory claims. This Court's decision in *Lawrence* noted that both this Circuit and our sister circuits have "interpreted the 'clear and unmistakable' standard to require specific references in the [collective bargaining agreement] either to the statutes in question or to statutory causes of action generally." *Lawrence*, 841 F.3d at 84. Accordingly, in *Lawrence* we held that where

13

the collective bargaining agreement in question merely contained the vague directive that "any disputes . . . shall be subject" to a grievance and arbitration procedure, the agreement did not clearly and unmistakably mandate arbitration of the plaintiff's statutory claims. *Id.* at 83. Here, by contrast, Article 8(B) specifically "cites . . . statutes." *Id.* at 84. It lists the FLSA, the New York Home Care Worker Wage Parity Law, and NYLL, and requires claims under those statutes to proceed pursuant to Article 8(B)'s "grievance and arbitration procedures." A-52. All of Abdullayeva's statutory claims involve either the FLSA or NYLL. As a result, Article 8(B) unequivocally encompasses her statutory claims and Abdullayeva is required to arbitrate them. *Cf. Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 240–41 (S.D.N.Y. 2016) (determining that collective bargaining agreement nearly identical to that at issue here "expressly evinces the parties' intention to arbitrate the precise claims brought here"); *Mazza v. Special Touch Home Care Servs., Inc.*, 2016 WL 6459623, at *2 (E.D.N.Y. Oct. 31, 2016) (same).

## II

The district court, in a single summary sentence, concluded that the arbitration clause here violated due process because "the worker apparently has

no part in selection of the arbitrator." *Abdullayeva*, 2018 WL 1181644, at *1. Attending contends that this conclusory determination was error because the Union had authority to negotiate on behalf of Abdullayeva, and so the fact that she did not *personally* participate in the selection of the arbitrator does not violate due process. We agree with Attending.

The Supreme Court has explicitly instructed that unions "may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer." *See 14 Penn Plaza*, 556 U.S. at 257. Moreover, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes." *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted); *see also Siegel v. Lewis*, 40 N.Y.2d 687, 689 (1976) (recognizing the right of the agreeing parties "to name those who are to be arbitrators"). As Abdullayeva's bargaining representative, the Union here was authorized to negotiate "conditions of employment," including arbitration clauses, with Attending on behalf of Attending's employees. *See* 29 U.S.C. § 159(a). Article 8(B), including its proviso that "claims . . . shall be submitted to final and binding arbitration before Elliott Shriftman," was the

15

product of the Union's negotiations with Attending. While it is true that in New York, arbitration procedures must generally conform to the "due process right of notice and opportunity to defend," *Beckman v. Greentree Sec., Inc.*, 87 N.Y.2d 566, 570 (1996), Abdullayeva does not argue that Article 8(B)'s procedures are lacking in notice, or that the selected arbitrator is biased or would conduct arbitration proceedings in bad faith. Accordingly, the challenged portion of the arbitration clause, which simply "specif[ies] with whom" arbitration will be conducted in accordance with established Supreme Court precedent, *see American Exp. Co.*, 570 U.S. at 233, does not violate due process.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with directions to compel arbitration and stay further proceedings (including those related to Abdullayeva's alternative unjust enrichment claim) pending arbitration.[5]

---

[5] Under *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015), it is inappropriate for a court to dismiss an action after compelling arbitration where a stay has been requested by any party, *see id.* at 343. Here, Attending's motion to compel arbitration sought either a stay *or* a dismissal. As a result, a party (Attending) has requested a stay, and *Katz* requires that that stay be granted. *Cf. Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 20 (2d Cir. 2016) (determining that district court lacked discretion to dismiss case where motion to compel arbitration "sought either a stay or dismissal"; the district court was instead required to stay the case pending arbitration).

16


A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit